IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


| | |
|---|---|
| APRIL N. HUNTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:10CV401 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, April N. Hunter, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain review of a final decision of the Commissioner of Social Security denying her claims for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Act.[1] The Court has before it the certified administrative record and cross-motions for judgment.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for a POD, DIB, and SSI benefits on October 24, 2006 alleging a disability onset date of May 21, 2003. (Tr. 108-115.)[2] The applications were denied initially and upon reconsideration. (*Id.* at 56-71.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 72-73.) Present at the April 7, 2009 hearing were Plaintiff and her attorney, while a Vocational Expert ("VE") testified telephonically. (*Id.* at 28, 23-55.) The ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 8-21.) On March 30, 2010 the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-4.)

## II. FACTUAL BACKGROUND

Plaintiff was twenty-eight years old on the alleged disability onset date, had at least a high school education, was able to communicate in English, and had past relevant work as a security officer, cashier, housekeeper, machine loader, and an administrative clerk. (*Id.* at 15-17.)

## III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial

---

[2] Transcript citations refer to the administrative record.

evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The issue before the Court is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

3

## IV. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under the Act as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(1)(a), 1382c(a)(3)(A). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[4] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

### A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520, 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

---

[3] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).
[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

4

(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3) Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5) Whether the claimant is able to perform any other work considering both her residual functional capacity[5] and her vocational abilities. If so, the claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920.

Here, the ALJ reached the fifth step of the sequence, at which point he determined that Plaintiff was not disabled from May 21, 2003 through the date of the decision. (Tr. at 16-17.) The ALJ first determined that Plaintiff had not engaged in substantial gainful activity at any time since her alleged onset date of May 21, 2003. (*Id.* at 13.) The ALJ next found in step two that Plaintiff had severe impairments: "problems with low back, neck and knees." (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination

---

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

5

of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 14.) At step four, the ALJ concluded that Plaintiff could no longer perform her past relevant work as a security officer, cashier, housekeeper, machine loader, and administrative clerk. (*Id.* at 15.)

### B. Residual Functional Capacity Determination

Prior to steps four and five, the ALJ determined Plaintiff's RFC based on the ALJ's evaluation of the evidence, including Plaintiff's testimony and the findings of treating and examining health care providers. (*Id.* at 14-15.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as follows, standing and walking limited to two hours cumulatively out of an eight hour workday, with unlimited sitting; occasional climbing, balancing, stooping, kneeling, crouching, and crawling; and with a hand held assistive device for prolonged walking. (*Id.* at 14.) In reaching a conclusion about Plaintiff's RFC, the ALJ considered the evidence, including Plaintiff's testimony, and found that "the claimant's medically determinable impairments could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.* at 15.)

### C. Past Relevant Work

The ALJ found in step four that Plaintiff could not perform her past relevant work as a security officer, cashier, housekeeper, machine loader, and an administrative clerk. (*Id.*)

### D. Adjustment to Other Work

The claimant bears the initial burden of proving the existence of a disability. 42

U.S.C. §§ 423(d)(5), 1382c(a)(3)(H)(i); 20 C.F.R. §§ 404.1512, 416.202-03; *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979). Once the claimant has established at step four that she cannot do any work she has done in the past because of her severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with her RFC, age, education and past work experience. *Hunter*, 993 F.2d at 35; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

The ALJ found that Plaintiff was 28 years old on her alleged disability onset date which is defined as a "younger individual age 18-44," with at least a high school education, and the ability to communicate in English. (Tr. 16.) The ALJ noted that transferability of job skills was not material because "using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (*Id.*) The ALJ found that based on Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform and that Plaintiff was not disabled from May 21, 2003, the alleged onset date, through the date of decision. (*Id.* at 16-17.)

### V. ANALYSIS

Plaintiff raises three issues. First, Plaintiff contends that the ALJ failed to evaluate the entire record. (Docket Entry 19 at 3.) Second, Plaintiff argues that the ALJ failed to properly evaluate her credibility. (*Id.*) Third, Plaintiff contends the ALJ failed to properly evaluate her RFC. (*Id.*) As explained below, these arguments lack merit.

7

### A. The ALJ Considered the Entire Record.

Citing *Jordan v. Califano*, 582 F.2d 1333, 1335 (4th Cir. 1978), Plaintiff contends that the ALJ erred by failing to consider any evidence subsequent to "early 2007" in arriving at his decision. (Docket Entry 19 at 3-4.) Plaintiff contends further that the ALJ ignored (1) medical records from Advanced Interventional Pain Management covering the period January 2007 through January 2009 (Tr. at 387-420), (2) records from Shipman Family Home Care beginning in March 2009 (*id.* at 421-26), (3) records from Wake Forest University Baptist Medical Center covering the period March 2008 through May 2008 (*id.* at 427-37), (4) medical records from Daymark Recovery Services covering the period from September 2007 through October 2008, recording treatment for severe depression (*id.* at 463-77), (5) and medical evidence from Triad Neurosurgical Associates from November 2007 until April 2009 related to treatment of Plaintiff's back problem, including her back surgery (*id.* at 478-91).

This argument lacks merit for five reasons. First, the record indicates that the ALJ considered the entire record. In fact, in his decision the ALJ repeatedly states that he considered the entire record. Specifically, the ALJ issued his decision "[a]fter careful consideration of all the evidence" (*id.* at 11) and "[a]fter careful consideration of the entire record" (*id.* at 13, 14). This included "consider[ing] all symptoms" (*id.* at 14) throughout "the entire case record" and considering "the evidence of record as a whole" (*id.* at 15). The Court is entitled to rely on these representations absent a compelling reason to the contrary. *See Grubby v. Astrue*, No. 1:09cv364, 2010 WL 5553677, *6 (W.D.N.C. Nov. 18, 2010)

8

(unpublished) *citing Rappaport v. Sullivan*, 942 F.2d 1320, 1323 (8th Cir. 1991) (concluding that because the ALJ stated that he considered the entire record in making his decision, the court could reject the claim that the claimant's wife's testimony was not considered).

Second, Plaintiff's assertions that the ALJ failed to consider all the evidence lacks record support. Plaintiff only points to the ALJ's "failure" to specifically mention certain evidence of record in rendering a decision, yet, it is well established that an ALJ need not provide a written evaluation for each document in the record. *See Brittain v. Sullivan*, No. 91-1132, 1992 WL 44817, *6 (4th Cir. March 11, 1992) (unpublished) ("An ALJ need not comment on all evidence submitted."); *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995); *see also N.L.R.B. v. Beverly Enterprises-Massachusetts*, 174 F.3d 13, 26 (1st Cir. 1999) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."); *Mellon v. Astrue*, No. 4:08-2110-MBS, 2009 WL 2777653, at *13 (D.S.C. Aug. 31 2009) (unpublished) ("[I]t is widely held that ALJs are not required to specifically discuss and analyze every piece of evidence in the case in their narrative opinions so long as it is possible for the reviewing court to realize that all relevant evidence was considered, though not written about, in reaching the ultimate decision."); *Brewer v. Astrue*, No. 7:07–CV–24–FL, 2008 WL 4682185, at *3 (E.D.N.C. Oct 21, 2008) (unpublished) ("While the ALJ must evaluate all of the evidence in the case record, the ALJ is not required to comment in the decision on every piece of evidence in the record, and the ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered."). As Defendant correctly points out, the ALJ's "failure" to discuss all the

evidentiary exhibits, including those mentioned by Plaintiff, in a nearly 500 page record is not error *per se*. (Docket Entry 21 at 4.)

Third, despite Plaintiff's arguments to the contrary, the ALJ did in fact reference some of the evidence Plaintiff contends the ALJ omitted from his decision. As Defendant correctly points out (*id.* at 5), the ALJ specifically discussed medical evidence from Triad Neurosurgical Associates, which is labeled "Exhibit 20F" in the administrative record (Tr. 15, 478-91). Citing that Exhibit, the ALJ stated that:

> It is noted that the claimant underwent a laminectomy on February 20, 2009 (Ex. 20-F). The residuals from this surgery may well have rendered her disabled for a period of time thereafter. However, she would be expected to regain the ability for at least a broad range of sedentary work as reflected in the assigned residual functional capacity within less than twelve months.

(*Id.* at 15.) As Defendant further points out (Docket Entry 21 at 5), the fact that the ALJ referenced testimony given at the 2009 hearing (Tr. at 15, 17) also undermines Plaintiff's assertion that "no evidence subsequent to early 2007 was considered by the ALJ" (Docket Entry 19 at 4). Similarly, the ALJ referenced the April 21, 2007 opinion of Dr. David Weisman, a consultative examiner for the Disability Determination Services, who opined Plaintiff could sit comfortably with no limitations. (Tr. 14, 220-25.)

Fourth, the case cited by Plaintiff in support of his contention that the ALJ had a heightened obligation to explicitly discuss in his decision those bodies of evidence itemized above is not relevant to this case. *Jordan v. Califano* did not address Social Security benefits under Title 42, but instead considered black lung benefits under Title 30. 582 F.2d 1333 (4th

10

Cir. 1978). In *Jordan*, the Fourth Circuit Court of Appeals remanded a miner's claim because the Secretary of Health, Education, and Welfare failed to adequately explain his rejection of evidence developed after the cutoff date for black lung claims, June 30, 1973. *Id.* at 1335-36. No similar issue is involved in this matter.

Fifth, the undersigned notes that Plaintiff's sole argument here is that the ALJ failed to consider the abovementioned exhibits. Plaintiff does not advance her argument further by setting forth what it is about these particular exhibits that she deems of import to the present analysis. The undersigned has examined the exhibits and has examined the entire record. This evidence does not demonstrate that the ALJ erred in deeming Plaintiff able to work, nor does it demonstrate that the ALJ's decision lacks substantial evidence.

Specifically, the medical records from Advanced Interventional Pain Management (Tr. 387-420, Ex. 15F) demonstrate that Plaintiff received injections and medication to help ease her pain. For example, on October 20, 2008, Plaintiff "state[d] that overall her medication is working well," indicated her pain was a "6/10," yet also indicated that her pain was "constant," "occasional" and "unbearable." (*Id.* at 392.) This is generally consistent with the medical records in this Exhibit: pain between a 6/10 and 8/10, treated with medication providing various levels of relief, yet also frequently self-described as "unbearable." (*See, e.g.*, Tr. 398, 396, 394, 400.) This exhibit also shows that Plaintiff's pain medication was increased and decreased in regards to her reported pain levels. (*Id.*) This is not inconsistent with the ALJ's record analysis, his partial discounting of Plaintiff's credibility (of which more below), or his general conclusions.

11

As for the records from Shipman Family Home Care, Exhibit 16F (*id.* at 421-26), they reference Plaintiff's lumbar laminectomy, indicate she "has just been discharged from [the] hospital," that she has a neck brace and a walker, and indicate further that a "complete rehabilitation" is anticipated in three to six months (*id.* at 422). Nothing about this exhibit suggests error on the part of the ALJ, who, as mentioned, addressed Plaintiff's laminectomy in his decision.

Exhibit 17F contains records from Wake Forest University Baptist Medical Center. (*Id.* at 427-37.) These records indicate that Plaintiff fractured her shoulder in a fall in March of 2008 and was in a sling for a number of weeks as a result. (*Id.* at 431-35.) Plaintiff received therapy and improved. (*Id.*) While Plaintiff's fracture healed, she still had difficulty with overhead activities and reaching across as of May 2008, possibly due to "[c]uff tendinosis with partial tear of the articular surface of the supraspinatus tendon at the insertion of the greater tuberosity." (*Id.* at 428.) Nevertheless, any concern here is addressed by Plaintiff's testimony at her administrative hearing. At that hearing in April of 2009, the ALJ asked Plaintiff if she had any trouble bending or stooping, to which Plaintiff responded that part of her restriction was "no bending, no stooping." (Tr. 44.) The ALJ then asked Plaintiff if she had "any trouble reaching with either arm" and she replied "I don't have any trouble reaching, but I have a reacher in case I drop something to the floor." (*Id.*) Nothing in this exhibit suggests the ALJ erred in concluding Plaintiff was not disabled under the Act.

The records relating to Daymark Recovery Services, Exhibit 19F (Tr. 463-76)[6], show

---

[6] The Daymark records are labeled 19F, not 18F as Plaintiff asserts. (TR. 463.) Exhibit 18F

12

Plaintiff received treatment for depression between September 2007 and October 2008. The Daymark medical records describe Plaintiff as depressed and dealing with pain from her back injury, as well as anxiety and stress, though they do not indicate that her depression rendered her incapacitated, nor do they indicate that her depression would subject her to any particular limitations. By way of example, the last Daymark entry, dated October 23, 2008, indicates Plaintiff suffered from "[s]evere and persistent depression largely due to chronic pain without psychotic features," but that she was "alert," and "well-groomed." (*Id.* at 463.) Though she had a "depressed and blunted . . . affect," she "did not cry" and she "did not appear to be totally incapacitated by depression[,] but she did appear to be depressed." (*Id.*) Plaintiff's "speech was coherent and relevant," she displayed "no pressure, no flight of ideas, and no looseness of association," and "no manic symptoms were reported or observed." (*Id.*) Plaintiff reported that her "depressive symptoms ha[d] gotten worse since she ran out of her Cymbalta and other medications," that "[s]he does have a lot of anxiety and worrying," and that she "[s]ometimes feels hopeless and helpless but is not suicidal or homicidal." (*Id.*) Plaintiff indicated that "[s]he does go to church and gets some support there," and it was noted that her "thought content was logical and goal directed," that she displayed "[n]o psychotic features," and was "not suicidal or homicidal." (*Id.*) Plaintiff was also "oriented to time, place, and person," her "memory [was] intact," and her "insight . . . adequate." (*Id.*) The doctor's response to Plaintiff's self-reporting was, among other things,

---

contains additional records from Wake Forest University Baptist Medical Center, which generally address Plaintiff's condition prior to 2007. The ALJ mentions an MRI from Exhibit 18F in his decision, so he clearly considered Exhibit 18F. (*Id.* at 14.)

13

to restart her on Cymbalta. (*Id.* at 464.)

The records also provide a Global Assessment of Functioning ("GAF") score for each visit, the lowest being in September 2007 (GAF Score of 41) while most scores, including the most recent score stemming from Plaintiff's October 2008 visit (GAF Score of 50), are appreciably higher. (*Id.* at 463-477.) The GAF is a scale ranging from zero to one hundred used to rate an individual's psychological, social, and occupational functioning. *See* Am. Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th Ed., Text Revision 2000). Scores between 51-60 indicate moderate symptoms or moderate difficulties in social, occupational, or school functioning. *Id.* Scores between 41 and 50 indicate serious symptoms (such as suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*i.e.*, no friends, unable to keep a job). However, there is no meaningful discussion of these scores in the Daymark treatment notes, what they might specifically demonstrate about Plaintiff, or how they might limit her ability to function. Consequently, any decision by the ALJ to disregard this information as conclusory, or discount it in light of additional evidence, is not prejudicial error. *See, e.g.*, *Ashby v. Astrue*, Civil Action No. 5:11–CV–8, 2011 WL 3163234, at *21 (N.D.W.Va. July 5, 2011) (unpublished) (concluding that where no basis or explanation for the score assigned is provided, the ALJ is free to reject it where other contradictory evidence exists in the record) *adopted in* 2011 WL 3204559 (N.D.W.Va. July 26, 2011) (unpublished); *Clark v. Astrue*, EDCV 08–0702–JTL, 2009 WL 542166, at *4-6 (C.D. Cal. Mar. 4, 2009) (unpublished) (noting that an ALJ is permitted to discredit a GAF score where

14

it is unsupported by objective evidence).

Here, the ALJ's assessment of Plaintiff's depression was set forth at step two of his evaluation. The ALJ noted that the "claimant also alleges depression" however "[t]he evidence of record fails to establish that this complaint rises to the level of a medically determinable or 'severe' impairment as defined by the Act and Regulations." (Tr. 14.) For the reasons set forth above, the ALJ's decision is supported by substantial evidence. And, assuming Plaintiff's depression is indeed severe, nothing in the record suggests that it would impose limits on Plaintiff beyond those set forth in the RFC, discussed in more detail below.

Finally, as for Exhibit 20F, records from Triad Neurosurgical Associates, they detail Plaintiff's lumbar laminectomy and set forth the treatment Plaintiff received immediately after her operation, including treatment for a post-surgical infection. (*Id.* at 478-91.) These records indicate that two weeks after surgery Plaintiff stated that her back pain was worse than before the surgery. (*Id.* at 482.)[7] Yet, there is nothing in these notes that would indicate that the ALJ erred in concluding that Plaintiff was not disabled. And again, Plaintiff has not set forth specific arguments as to how the ALJ may have erred in conducting his evaluation in regards to the abovementioned evidence, and after careful consideration of the evidence itself, the undersigned can find no meaningful error.

### B. The ALJ's Credibility Determination Is Supported by Substantial Evidence.

Next, citing 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling ("SSR")

---

[7] At her hearing, Plaintiff was asked whether her lumbar laminectomy "help[ed] any" and she responded, "Really, I can't tell at this time. I [am] still having swelling. I'm still having a whole lot of trouble as I say. The only thing that does feel a little bit better is my left leg, but I still have pain in it because of my knees." (Tr. 38.)

15

96-7p, Plaintiff argues the ALJ erred by failing to provide a rationale for concluding that her subjective symptoms were not credible. (Docket Entry 19 at 4-5.) Plaintiff further asserts that the ALJ's analysis of this issue was "boilerplate," without any discussion of the medical evidence or of Plaintiff's testimony, and "conclusory" in nature. (*Id.* at 5.)

The Fourth Circuit Court of Appeals has adopted a two-step process by which the ALJ must evaluate a claimant's symptoms. The first step requires the ALJ to determine if the plaintiff's medically documented impairments could reasonably be expected to cause plaintiff's alleged symptoms. *Craig*, 76 F.3d at 594. The second step includes an evaluation of subjective evidence, considering claimant's "statements about the intensity, persistence, and limiting effects of [claimant's] symptoms." *Id.* at 595 (citing 20 C.F.R. §§ 416.929(c)(4) and 404.1529(c)(4).) "The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment." *Grubby*, 2010 WL 5553677, at *3 (citing *Craig*, 76 F.3d at 595; 20 C.F.R. § 404.1529(c).) "Other evidence" refers to factors such as claimant's daily activities, duration and frequency of pain, treatment other than medication received for relief of symptoms, and any other measures used to relieve claimant's alleged pain. *Id.* Moreover, SSR 96-8p requires that:

> The adjudicator must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. Careful consideration must be given to any available information about symptoms because subjective

16

descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone.

SSR 96-8p, *Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, *5. Similarly, in determining the credibility of a claimant, SSR 96–7p, *Assessing the Credibility of an Individual's Statements*, instructs the ALJ to "consider the entire case record" and requires a credibility determination to "contain specific reasons for the finding on credibility, supported by the evidence in the case record[.]" SSR 96–7p, 1996 WL 374186, at *4. Importantly, an ALJ's credibility determination is also entitled to "substantial deference." *Sayre v. Chater*, NO. 95-3080, 1997 WL 232305, at *1 (4th Cir. May 8, 1997) (unpublished); *Salyers v. Chater*, No. 96-2030, 1997 WL 71704, at *1 (4th Cir. Feb. 20, 1997) (unpublished).

Here, substantial evidence supports the ALJ's assessment of Plaintiff's credibility, including allegations of pain. The ALJ concluded that:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> As for the opinion evidence, the Administrative Law Judge Notes that the record does not contain any opinions from treating or examining physicians indicating that the claimant is permanently disabled or that [s]he even has limitations greater than those determined in this decision. Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating physicians, yet a review of the record in this case reveals no restrictions recommended by the treating physician.

17

Case 1:10-cv-00401-CCE-JLW   Document 22   Filed 05/15/13   Page 17 of 20

> Thus, the evidence of record as a whole supports a finding that the claimant's symptoms are not of significant proportions. Rather, the evidence shows that the claimant's pain is intermittent, mild to moderate at most, and not of such intensity and persistence that it significantly limits her capacity for work. Thus, the undersigned finds the claimant's allegations concerning severity of her symptoms not wholly credible, insofar as her claim they preclude all work.

(Tr. 15.)

As noted, the ALJ "careful[ly] consider[ed]" the evidence and found that Plaintiff's impairments "could reasonably be expected to cause some symptoms." (*Id.* at 14-15.) Thus, the ALJ performed the first step of the *Craig* analysis. Next, the ALJ performed step two of the analysis, concluding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the RFC. (*Id.*) In support of this conclusion, the ALJ was correct to point out that the opinion evidence lacks any relevant opinion that Plaintiff is permanently disabled[8] or treatment records indicating restrictions more significant than those set forth in the RFC. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (holding that a lack of physical restrictions from a treating source tends against a finding of total disability); *Hilton Williams v. Barnhart*, Civ. A. No. 7:05cv00674, 2006 WL 3099648, *3 (W.D.Va. Oct. 24, 2006) (unpublished) (finding that a mere diagnosis absent any evidence of actual functional limitations was insufficient to establish disability). The ALJ then concluded that the record

---

[8] Although not mentioned by either party, the undersigned notes that one doctor did indeed opine that Plaintiff was "disabled" after the abovementioned shoulder fracture, which left Plaintiff in a sling for a period of time. ((Tr. at 433) ("She is disabled at this point.")) However, as noted, Plaintiff's testimony at the hearing, also described above, indicates that issues with reaching resolved and did not render Plaintiff disabled under the Act.

18

supports a finding that Plaintiff's "symptoms are not of significant proportions," and that Plaintiff's pain is "intermittent, mild to moderate at most, and not of such intensity and persistence that it significantly limits her capacity for work." (*Id.*) The ALJ's credibility determination is supported by substantial evidence.

### C. The ALJ's RFC Assessment Is Supported by Substantial Evidence.

Last, Plaintiff asserts that the ALJ failed to provide any rationale for his RFC. (Docket Entry 19 at 5.) This argument lacks merit. The ALJ explained that he based his RFC determination on "the evidence of record as a whole." (Tr. 15.) The ALJ cited to medical evidence in the form of Plaintiff's February 2009 back surgery and also cited the lack of medical evidence regarding Plaintiff's symptoms. (*Id.*) This comports with Social Security Ruling 96-8p. SSR 96-8p, 1996 WL 374184, *5 ("The RFC assessment must be based on all of the relevant evidence in the case record, such as: Medical history, Medical signs and laboratory findings . . . Medical source statements . . . ."). Beyond this, substantial evidence supports the RFC set by the ALJ, which included the ability "to perform sedentary work . . . standing and walking . . . limited to two hours cumulatively out of an eight hour workday, but sitting is unlimited; she can only occasionally climb, balance, stoop, kneel, crouch and crawl; and needs hand-held assistive device for prolonged walking." (Tr. 14.)

As Defendant correctly points out (Docket Entry 21 at 7), the RFC set by the ALJ was *more* restrictive than those limitations assessed by state agency examiners. They opined that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk about six hours in an eight-hour workday, and could push or pull without limitation. (*Id.* at 189,

19

Case 1:10-cv-00401-CCE-JLW   Document 22   Filed 05/15/13   Page 19 of 20

229.)  This is consistent with an RFC for medium work.  *See* 20 C.F.R. §§ 404.1567(c), 416.967(c).  Likewise, one state agency examiner opined that Plaintiff lacked any postural limitations, while another found that Plaintiff could frequently crawl, kneel, balance, and climb.  (Tr. 190, 230.)  To the extent Plaintiff sought a more restrictive RFC, she bore the burden through step four, which she has not carried.   42 U.S.C. §§ 423(d)(5), 1382c(a)(3)(H)(i); 20 C.F.R. §§ 404.1512, 416.202-03; *Smith*, 592 F.2d at 1236.  In fact, Plaintiff has not even asserted what additional limitation the ALJ should have included in her RFC and after a review of the record, none seems readily apparent.  Simply put, the ALJ's RFC is supported by substantial evidence.

## VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment Reversing the Commissioner (Docket Entry 17) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 20) be **GRANTED**, and the final decision of the Commissioner be upheld.

_____
Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
May 15, 2013